IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 2:24-cr-487-MHT-JTA |
| | ) | (WO) |
| AARON DEVONTE ANDERSON | ) | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Before the court is Defendant Aaron Devonte Anderson's motion to suppress. (Doc. No. 30.) Defendant contends he was detained in violation of the Fourth Amendment on March 3, 2023, and moves to suppress evidence obtained as a result of the alleged detention. Defendant further contends he was not given proper *Miriranda*[1] warnings before police questioning and moves to suppress his statements made to police. After due consideration of the parties' arguments, evidence and applicable law, the undersigned concludes the motion to suppress is due to be GRANTED in part and DENIED in part.

## I.    PROCEDURAL HISTORY

A federal grand jury returned a three-count indictment against Defendant on December 4, 2024, charging him with possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1); possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1); and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). Defendant entered a plea of not guilty during his arraignment. (Doc. No. 7.)

---

[1] *See Miranda v. Arizona*, 384 U.S. 436, 447 (1966).

Defendant filed the instant motion on February 14, 2025. (Doc. No. 30.) The government filed a response to the motion (Doc. No. 34), and Defendant filed a reply (Doc. No. 37). The undersigned conducted an evidentiary hearing on the motion on March 11, 2025. (Doc. No. 46, Suppression Hr'g Tr.)

The motion is ripe for review.

## II.    FINDINGS OF FACT[2]

During the evidentiary hearing, the court heard testimony from four witnesses. (Doc. No. 46, Tr.) The government presented the testimony of James Ray[3] and Michael Bradford,[4] both former officers for the Clanton Police Department. Defendant presented the testimony of Deanna Jackson, a witness who was present at the scene, and Orlando Gonzalez, an investigator with the Federal Defender's Office. The testimony and evidence adduced at the hearing[5] establish the following facts.

On March 3, 2023, at 12:58 p.m., Officers Ray and Bradford responded to a 911 hang-up call near the Inverness Apartments in Clanton, Alabama. Officer Ray arrived at

---

[2] The undersigned reaches findings of fact at a suppression hearing based on a preponderance of the evidence. *United States v. Beechum*, 582 F.2d 898, 913 n.16 (5th Cir. 1978) (citation omitted). The undersigned is mindful that decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding in the Eleventh Circuit. *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[3] Officer Ray currently works as a police officer for the City of Jemison and has been a police officer for 8 years. (Doc. No. 46, Tr. at 5–6.)

[4] Officer Bradford currently works as a police officer for the City of Jemison and has been a police officer for 14 years. (*Id*. at 60–61.)

[5] Officer Ray's police report (Gov. Ex. 1), Officer Ray's body camera recording (Gov. Ex. 2), Officer Bradford's body camera recordings (Gov. Exs. 3, 4), and a still of Officer Ray's body camera recording (Def. Ex. 1b) were admitted into evidence and published during the hearing.

the scene first,[6] driving around to the right side of the apartment complex. When he didn't see anyone, he asked dispatch for an approximate location, and dispatch said the call pinged from the left side of the apartment complex. Officer Ray then drove to the left side of the complex and stopped when he saw Defendant and others[7] standing outside of a white Nissan Sentra. Defendant and the others were the only people Officer Ray saw in the parking lot. Officer Bradford arrived shortly thereafter and parked his police vehicle behind the white Nissan Sentra.[8] According to Officer Bradford, there were two men, including Defendant, and one woman outside of the car. The other man was wearing a ski mask that covered nearly his entire head, except for his eyes, nose, cheeks and mouth.[9]

What happened next is in dispute.[10] According to Officers Ray and Bradford, they exited their police vehicles and then Officer Ray asked if Defendant or the others had called

---

[6] Officer Ray testified he arrived at the scene approximately five to six minutes before Officer Bradford. (Doc. No. 46, Tr. at 28–29.) In contrast, Officer Bradford testified they arrived on the scene simultaneously and he pulled into the apartment complex first. (*Id*. at 84.) The undersigned finds Officer Ray to be a credible witness. His testimony withstood scrutiny on cross examination, and there are no material discrepancies between his testimony and the evidentiary record. The undersigned generally finds Officer Bradford to be credible, except when his testimony conflicts with Officer Ray's testimony and the body camera footage. Though Officer Bradford's testimony at times conflicted with the evidentiary record, it is worth noting he had been on duty since 3 p.m. the day before the hearing and had not slept before testifying. (*Id*. at 62–63.)

[7] In total, there were two men, two women, and a 5-year-old child in or around the car.

[8] Although both Officer Ray and Officer Bradford testified that Officer Bradford's police vehicle was not directly behind the white Nissan Sentra, the body camera footage indicates it was parked behind the white Nissan Sentra. (Gov. Ex. 2 at :28)

[9] Officer Ray's body camera footage from later in the encounter confirms the other male was wearing a ski mask. (*See* Gov. Ex. 2 at 5:18.)

[10] There is no body camera footage of the beginning of the encounter. Officers Ray and Bradford testified they were wearing K-9 cameras, which are often unreliable. (Doc. No. 46, Tr. at 19, 79.)

911. (Doc. No. 46, Tr. at 46–47, 63.) While approaching the white Nissan Sentra, Defendant reached or lunged across the passenger seat towards the driver's side door.[11] Officer Ray testified that he asked everyone to exit the vehicle at that time because of Defendant's behavior. (*Id*. at 12.) Officers Ray and Bradford testified they immediately smelled marijuana upon exiting their police vehicles.

According to Ms. Jackson, who was seated in the passenger seat of the white Nissan Sentra, Officer Bradford asked if anyone called 911 while still inside his vehicle.[12] (*Id*. at 118.) Defendant answered no and walked around the front of the vehicle and sat in the driver's seat. (*Id*. at 119.) After Defendant answered no, Officers Bradford and Ray exited their vehicles, approached the white Nissan Sentra, and asked again whether anyone called 911. (*Id*.)

At this point, it is undisputed that Officer Bradford approached the driver's side front door of the white Nissan Sentra. Officers Ray and Bradford noticed Ms. Jackson sitting in the front passenger seat and a five-year-old child sitting in the backseat. Officer Bradford looked down into the white Sentra[13] and saw an AR-15 pistol on the floorboard

---

[11] According to Officer Ray, Defendant dove into the passenger side of the white Nissan Sentra and reached for the driver side door. (Doc. No. 46, Tr. at 11.) According to Officer Bradford, Defendant was sitting down inside the passenger seat and reached across the center console as they approached. (*Id*. at 66, 91).

[12] Though in conflict with Officers Ray and Bradford's testimony, the undersigned finds Ms. Jackson to be a generally credible witness. She testified in a consistent, thoughtful manner, and her testimony withstood scrutiny on cross examination.

[13] According to Officers Ray and Bradford, the driver's side front door was open. (Doc. No. 46, Tr. at 52–53, 67.) Ms. Jackson testified she believed the door might have been closed but remembered Officer Bradford looking down inside the driver's side door and stated he could see

of the driver's side and a plastic baggie of pills near the door handle. He removed both from the vehicle and handed them to Officer Ray, who unloaded the weapon and placed the pills on the hood of Officer Bradford's police vehicle. This is approximately when Officer Ray's body camera began recording.[14]

Officer Bradford began checking IDs and running them through dispatch. All came back negative for warrants. Officer Ray asked Defendant, "you got anything else in this vehicle we need to know about? Anything at all? If you do, let us know." (Gov. Ex. 2 at 4:23-4:40.) Defendant did not reply. Officer Bradford proceeded to place handcuffs on Defendant, but told him that he was not under arrest. Officer Ray added, "yeah and I don't feel like running." (*Id.* at 5:00–5:08.) Officer Ray handcuffed the other man wearing the ski mask.

While Officer Ray handcuffed the other man, Officer Bradford can be heard asking Defendant, "you got any weed on you or anything like that?" Defendant answered, "no." Then Officer Bradford followed up with, "personal use? You got personal use, let me know, I'll cut you a ticket let you roll on." (Gov. Ex. 2 at 5:22–5:30.) One woman on the scene then asked why the officers were handcuffing the two men. Officer Ray and Bradford responded they were cuffing them because they had pulled drugs and a gun from the car, and there were more people on the scene than officers. (*Id.* at 5:39–5:55.)

---

inside the car. (*Id.* at 119, 128.) Either way, it is undisputed Officer Bradford could see into the car.

[14] Officer Ray's body camera was pointed at the sky for most of the 29-minute video. Officer Bradford's body camera was similarly angled.

After this exchange, Officer Ray asked Defendant, "anything else in there, man?" (Gov. Ex. 2 at 6:11.) Defendant again did not respond. Officer Ray followed up with, "the reason I'm asking is there anything else is cause I smell weed coming out of the car. So, is there anything else in it?" Defendant again did not respond. Officer Ray continued, "I mean if there is, the way this works is you're honest, we work with you." (*Id*. at 6:38–6:51.) Defendant again did not respond. Officer Ray again asked, "is there anything in the car, man?" (*Id*. at 7:09.) Defendant responded to Officer Ray's question by telling Officer Bradford, "I'm talking to you." This is approximately when Officer Bradford's body camera began recording. Officer Bradford replied, "okay. Is there anything else in the car?" Defendant responded, "yes, a little bit of weed." (Gov. Ex. 3 at :00–:10.) Eventually, Defendant can be heard saying, "it's gonna be right up under that seat," indicating the driver's seat. (*Id*. at :22.)

After Officer Ray asked Ms. Jackson and the child to exit the vehicle, he began searching the car. While Officer Ray searched the car, Officer Bradford asked Defendant what the pills were, stating "you don't know? You don't know? You know I know what they are." (Gov. Ex. 2 at 1:30–36.) During the search, Officer Ray found marijuana under the driver's seat and a backpack containing scales, methamphetamine, MDMA (or ecstasy), and a white powder substance suspected to be cocaine. After finding the drugs, Officer Ray handcuffed the other woman on the scene. (*Id*. at 11:53.) When asked why she was being handcuffed, Officer Ray responded, "just part of the situation right now." (*Id*. at 12:10.)

Officer Ray then approached Defendant with the drugs he found and asked, "whose is all this, man?" Defendant replied, "my drug use." (*Id*. at 13:18.) Officer Ray responded,

6

"you don't use all this." To which Defendant replied, "if you drug test me right now, you will find everything right there in my system." (Gov. Ex. 2 at 13:12–13:26.) Officer Ray continued to search the car and then patted down Defendant. He took $6,850 in cash from Defendant's front left pocket. Officer Bradford informed Defendant that detectives were coming to the scene and that it would be up to Defendant whether he talked with them or not stating, "you don't have to, you have a right, okay?" (Gov. Ex. 4 at :23–:56.) After discussing why detectives were coming to the scene, Defendant, unprompted, stated, "if I'm drug tested right now, everything right there is in my system." Officer Bradford asked, "all that's in your system?" Defendant replied, "I'm a user, bro." (*Id*. at 1:23–1:29.)

Eventually, while Officer Ray bagged up the drugs, Officer Bradford asked Defendant, "how much is this worth?" Defendant's response is hard to hear, but he stated something about his drug use. Officer Bradford responded, "you use that much?" To which Defendant replied, "not that, I'm like talking about this." Because of the camera angle, it is unclear what Defendant meant by "that" and "this." Defendant continued, "I'll take it out of this and put it in something I can use." (Gov. Ex. 2 at 25:50–26:18.) Officer Ray's body camera footage ends when he asked an unidentified man whether he needed to keep his body camera on, and the man shook his head "no." (*Id*. at 29:28.)[15]

Officer Bradford testified Officer Ray arrested Defendant *before* the detectives arrived on scene. (Doc. No. 46, Tr. at 100.) He further testified he heard Officer Ray read

---

[15] While this man was not identified in the video or at the hearing, the undersigned infers from Officer Ray's interaction with that man that he is one of the narcotics detectives who arrived on the scene.

Defendant his *Miranda* rights and confirmed the detectives arrived *after* Defendant was Mirandized.[16] (*Id.* at 101.) Officer Ray's body camera footage and testimony[17] does not support this version of events. (*See* Gov. Ex. 2.) On the body camera footage submitted to the court from both Officer Ray and Officer Bradford, neither officer is heard reading Defendant his *Miranda* rights. Officer Ray's body camera footage appears to end when the narcotics detectives arrived on the scene, indicating he did not Mirandize Defendant before detectives arrived. Furthermore, Officer Ray testified he did not place Defendant under arrest. (Doc. No. 46, Tr. at 17.) The police report indicates Officer Bradford arrested Defendant. (Gov. Ex. 1 at 1.) Accordingly, it is unclear when or whether Defendant was read his *Miranda* rights. Although it is unclear which officer or detective placed Defendant under arrest, it is undisputed Defendant was eventually arrested.

## III.    DISCUSSION

A.    <u>Motion to Suppress and Responses</u>

First, Defendant asserts he was unlawfully stopped because the officers did not have reasonable suspicion to exit their vehicles and approach him. (Doc. No. 30 at 11.) Defendant avers the stop was complete when Officers Ray and Bradford asked him whether anyone had called 911 and he responded in the negative. (*Id.*) Second, Defendant asserts Officer Ray and Bradford's questioning was unconstitutional because he was not read his

---

[16] The undersigned does not find this part of Officer Bradford's testimony credible because it conflicts with Officer Ray's testimony, body camera footage, and the police report.

[17] Officer Ray did not testify as to when, or whether, he read Defendant his *Miranda* rights.

*Miranda* rights. (*Id*. at 7, 16.) Third, Defendant argues all evidence, statements, and fruits of the unwarned statements must be suppressed. (*Id*.)

The government responds Defendant was not unlawfully stopped because the initial contact with him was not a stop or a seizure within the meaning of the Fourth Amendment. (Doc. No. 34 at 3.) The government contends the officers had reasonable suspicion and probable cause to search the vehicle because of the odor of marijuana, the baggie of suspected narcotics in plain view, and the firearm in plain view. (*Id*. at 5.) Next, the government maintains the officers were not required to provide *Miranda* warnings because Defendant was not under arrest when handcuffed and they were asking questions to protect themselves and others under the public safety exception to *Miranda*. (*Id*. at 8.) Finally, the government responds because there were no Fourth or Fifth Amendment violations, nothing should be suppressed under the exclusionary rule. (*Id*. at 10.)

Defendant replies Officers Ray and Bradford did not have an objectively reasonable suspicion to exit their vehicles because no one appeared to be in danger and no information indicated he or his family called 911. (Doc. No. 37 at 2.) Defendant argues the Fourth Amendment is implicated because the officers parked their vehicles directly behind his car and he was not free to leave. (*Id*. at 3.) Defendant avers all evidence obtained by the officers resulted from violations of his Fourth and Fifth Amendment rights, and thus should be suppressed. (*Id*. at 5.)

B.    Governing Legal Principles

1.    Fourth Amendment

"The Fourth Amendment guarantees '[t]he right of the people to be secure in their persons, houses, papers, effects, against unreasonable searches and seizures.'" *Wren v. United States*, 517 U.S. 806, 809 (1996). For purposes of the Fourth Amendment analysis, a seizure occurs "when the officer, using physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 19 n. 16 (1968). There are three types of encounters between police and citizens: (1) consensual exchanges with no coercion or detention; (2) brief investigatory detentions or seizures; and (3) arrests. *United States v. Jordan*, 635 F.3d 1181, 1185 (11th Cir. 2011) (citing *United States v. Perez*, 443 F.3d 772, 777 (11th Cir. 2006)).

Consensual encounters do not implicate the Fourth Amendment. *Jordan*, 635 F.3d at 1186; *see also United States v. Franklin*, 323 F.3d 1298, 1301 (11th Cir. 2003) ("There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets."). "The government bears the burden of proving voluntary consent based on the totality of the circumstances." *Jordan*, 635 F.3d at 1186 (citing *United States v. Beckham*, 505 F.2d 1316, 1318 (5th Cir. 1975)). If a "reasonable person would not feel free to terminate the encounter . . . then the encounter is no longer consensual, a seizure has occurred, and the citizen's Fourth Amendment rights are implicated." *Id*. (citing *United States v. Drayton*, 536 U.S. 194, 201 (2002)). When determining whether a seizure or a consensual encounter occurred, the Eleventh Circuit considers the following factors:

> whether a citizen's path is blocked or impeded; whether identification is retained; the suspect's age, education and intelligence; the length of the suspect's detention and questioning; the number of police officers present; the display of weapons; any physical touching of the suspect, and the language and tone of voice of the police.

*Id*. (quotation *Perez*, 443 F.3d at 778). These are not rigid factors, and the most important inquiry is whether "a person's freedom of movement was restrained by physical force or by submission to a show of authority." *Id*. (citing *California v. Hodari D.*, 499 U.S. 621, 626 (1991)). A seizure "does not occur simply because a police officer approaches an individual and asks a few questions." *Fla. v. Bostick*, 501 U.S. 429, 434 (1991).

The Fourth Amendment allows police officers to briefly seize or detain an individual "for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Terry*, 392 U.S. at 22. Police officers may conduct such a brief seizure or investigatory stop if "(1) the officers have a reasonable suspicion that the suspect was involved in, or is about be involved in, criminal activity, and (2) the stop 'was reasonably related in scope to the circumstances which justified the interference in the first place.'" *Jordan*, 635 F.3d at 1186 (quoting *Terry*, 392 U.S. at 19–20).

Reasonable suspicion is determined from the totality of the circumstances, *United States v. Sokolow*, 490 U.S. 1, 8 (1989), and requires the officer to have "a particularized and objective basis for suspecting legal wrongdoing." *United States v. Braddy*, 11 F.4th 1298, 1310–11 (11th Cir. 2021) (internal quotation marks omitted). "While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than a preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification[.]" *United States v. Lindsey*, 482 F.3d 1285,

1290 (11th Cir. 2007); *see also United States v. Acosta*, 363 F.3d 1141, 1145 (11th Cir. 2004). In determining whether reasonable suspicion existed at the relevant time, the court considers whether reasonable suspicion existed objectively under the circumstances. *See United States v. Nunez*, 455 F.3d 1223, 1226 (11th Cir. 2006).

2.    Fifth Amendment

The Fifth Amendment provides that "no person . . . shall be compelled in any criminal case to be a witness against himself . . . ." U.S. Const., amend. V. In *Miranda*, the Supreme Court expanded the Fifth Amendment right against self-incrimination to "individuals subjected to custodial interrogation by the police." *New York v. Quarles*, 467 U.S. 649, 654 (1984). *Miranda* requires that a suspect subjected to custodial interrogation be "warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any question if he so desires." *Miranda*, 384 U.S. at 479; *see also United States v. Newsome*, 475 F.3d 1221, 1224 (11th Cir. 2007) ("*Miranda v. Arizona*, 384 U.S. 436, 445 (1966) established that custodial interrogation cannot occur before a suspect is warned of his or her rights against self-incrimination.").

For purposes of *Miranda* warnings, a person is in custody "if he finds himself in 'circumstances that are thought generally to present a serious danger of coercion.'" *United States v. Woodson*, 30 F.4th 1295, 1303 (11th Cir. 2022) (quoting *Howes v. Fields*, 565 U.S. 499, 508–09 (2012)). The defendant bears the burden of showing he was in custody when he made the contested statements. *Id*. at 1302. Generally, a coercive environment

exists when "a reasonable person would have understood that his freedom of action was 'curtailed to a degree associated with formal arrest.'" *Id*. (quoting *United States v. Luna-Encinas*, 603 F.3d 876, 881 (11th Cir. 2010)).

An "interrogation" for *Miranda* purposes is defined as "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). "Volunteered statements of any kind are not barred by the Fifth Amendment." *Id*. (citing *Miranda*, 384 U.S. at 478).

But "[w]hile statements made in violation of *Miranda* must generally be suppressed, failure to give *Miranda* warnings does not require suppression of physical fruits of a suspect's unwarned but voluntary statements." *United States v. Robinson*, 760 F. App'x 762, 764 (11th Cir. 2019) (citing *United States v. Patane*, 542 U.S. 630, 633–34 (2004) (plurality opinion)). *See United States v. Jackson*, 506 F.3d 1358, 1361 (11th Cir. 2007) ("*Miranda* does not require the exclusion of physical evidence that is discovered on the basis of a voluntary, although unwarned, statement."); *also United States v. Manta-Carillo*, 491 F. App'x 125, 127 (11th Cir. 2012) ("[T]he Self–Incrimination Clause in the Fifth Amendment does not bar the admission of physical evidence that is the fruit of an unwarned but voluntary statement.") (citation omitted). Thus, unwarned statements made absent *Miranda* cannot be admitted into evidence at trial, but physical evidence discovered from unwarned statements does not suffer the same fate.

C.    Analysis of Defendant's Motion to Suppress

    1.    The Fourth Amendment was not violated when Officers Ray and Bradford approached Defendant's car.

When determining whether a police-citizen encounter was consensual or a seizure, the "ultimate inquiry remains whether a person's freedom of movement was restrained by physical force or by submission to a show of authority." *Jordan*, 635 F.3d at 1186. It is the government's burden to prove that a police-citizen encounter was consensual based on the totality of the circumstances. *Id*. A seizure "does not occur simply because a police officer approaches an individual and asks a few questions." *Bostick*, 501 U.S. at 434.

Here, it is undisputed Officers Ray and Bradford did not restrain Defendant's freedom of movement by physical force at the initial outset of the encounter. Defendant argues the placement of Officer Bradford's police vehicle, the manner of approach by the officers, and that the officers were armed was a show of authority sufficient to constitute a seizure under the Fourth Amendment. But, the Eleventh Circuit has held that an officer parking his police vehicle behind a person's car, flashing his "window lights," and briefly activating his siren did not constitute a detention under the Fourth Amendment. *Miller v. Harget*, 458 F.3d 1251, 1257–58 (11th Cir. 2006) (finding the officer "did not do anything that would appear coercive to a reasonable person. For example, he did not draw his gun, give any directions to [the suspect], or activate his roof lights."); *see also United States v. Knights*, 989 F.3d 1281, 1287 (11th Cir. 2021) (finding a reasonable person would have felt free to leave when an officer parked close behind the defendant's car, but defendant was

capable of walking away, the officers did not display their weapons, touch the defendant, or issue any commands).

Based on the totality of the circumstances, Officers Bradford and Ray's initial approach to Defendant's car was not a seizure within the meaning of the Fourth Amendment. Similar to the situation in *Miller v. Harget* and *United States v. Knights*, Officers Ray and Bradford did not display their weapons, touch Defendant, or issue any commands when they exited their vehicles. Furthermore, Defendant was not in the driver's seat when the officers stopped their vehicles, and he was capable of walking away from the officers when they first approached. Therefore, "the officers did not make a show of authority communicating that [Defendant] was not free leave." *Knights*, 989 F.3d at 1287.

After seeing Defendant reach or lunge across the passenger seat to the driver's side, Officer Ray testified he ordered everyone out of the car. While this command may have elevated the encounter to a brief, investigatory detention, the officers had reasonable suspicion to detain Defendant. Reasonable suspicion requires the officers to have "a particularized and objective basis for suspecting legal wrongdoing." *Braddy*, 11 F.4th at 1310–11 (internal quotation marks omitted). Here, the officers were responding to a 911 hang-up call at the Inverness Apartments. Dispatch gave Officer Ray an approximate location in the complex where the call originated. When Officers Ray and Bradford arrived at the approximate location, the only people they saw were Defendant and the others standing around the car. One of the people near the car was wearing a black ski mask, even

though it was a sunny day in March.[18] When the officers began their approach towards the car, Defendant reached or lunged across the car. Based on the totality of the circumstances, Officers Ray and Bradford had a reasonable suspicion the people around the car were involved in, or were about to be involved in, criminal activity in relation to the 911 call.

Accordingly, the undersigned concludes Officers Ray and Bradford did not violate Defendant's Fourth Amendment rights when they approached Defendant's car, thus the AR-15 and bag of MDMA found in plain view in the driver's side door are not due to be suppressed.[19]

      2.      Defendant was questioned in violation of *Miranda*.

Officers must provide *Miranda* warnings when a person is (1) in custody or similarly coercive environment and (2) subjected to interrogation. *See Miranda*, 384 U.S. at 479; *Newsome*, 475 F.3d at 1224. Defendant maintains Officers Ray and Bradford should have given Defendant *Miranda* warnings after he was handcuffed and before they asked him questions. The government responds that the officers did not need to provide warnings because Defendant was not under arrest when questioned, and the officers were allowed to ask questions pre-*Miranda* warning under the public safety exception.[20]

---

[18] The body camera footage indicates it was a sunny day. (*See* Gov. Exs. 2, 3, and 4.)

[19] Defendant does not challenge the officers' testimony that the AR-15 and the bag of MDMA were in plain view after Officer Bradford approached the car. Rather, Defendant challenges the initial approach of Officers Ray and Bradford towards his car. (*See* Doc. No. 46, Tr. at 150–51.) Because the undersigned concludes Officers Ray and Bradford did not violate the Fourth Amendment by approaching Defendant's car, the undersigned does not address the plain view doctrine or subsequent search of Defendant's car.

[20] Although Officer Bradford testified Officer Ray gave Defendant *Miranda* warnings, the undersigned does not find this testimony credible. Officer Ray testified he did not place Defendant

The undersigned first addresses whether Defendant was in custody for purposes of *Miranda* and then turns to the public safety exception.

The Eleventh Circuit employs a two-step process to determine whether a coercive environment exists for *Miranda* purposes. *Woodson*, 30 F.4th at 1303. The first step is to "ask whether 'a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave.'" *Id*. (quoting *Howes*, 565 U.S. at 509).[21] When the questioning at issue took place, Defendant was handcuffed and had watched law enforcement remove a gun and bag of pills from his car. Although Officer Bradford stated Defendant was not under arrest when he was handcuffed, Officer Ray added "yeah and I don't feel like running." (Gov. Ex. 2 at 5:00–5:08.) A reasonable person in Defendant's position would not believe he was free to terminate the encounter and leave.

The second step is to ask whether "'the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*.'" *Woodson*, 30 F.4th at 1303 (quoting *Howes*, 565 U.S. at 509). This determination is made

---

under arrest, Officer Ray never indicated he Mirandized Defendant, and his body camera footage does not support Officer Bradford's testimony. Furthermore, Officer Bradford's body camera footage does not include Defendant's formal arrest or formal *Miranda* warnings. Although Officer Bradford's body camera footage shows he told Defendant he did not have to talk to the narcotics detectives because he "had a right," Officer Bradford never explained this right nor any other right as required by *Miranda*. (Gov. Ex. 4 at :38–:50.) In addition, this exchange occurred after Defendant was repeatedly questioned by the officers. Accordingly, based on the evidence before the court, the undersigned concludes Defendant was not given *Miranda* warnings prior to being questioned by Officers Ray and Bradford.

[21] Determination of custody under *Miranda* is an objective inquiry. *Woodson*, 30 F.4th at 1303–04 (citing *Stansbury v. California*, 511 U.S. 318, 323 (1994)). Thus, the subjective beliefs of the defendant, officers, and witnesses are irrelevant. *Id*. at 1304 (citing *United States v. Moya*, 74 F.3d 1117, 1119 (11th Cir. 1996)).

under a totality of the circumstances approach, which includes factors such as the location and length of detention and whether the officer brandished weapons, touched the suspect, used language or a tone that indicated compliance with the officers could be compelled. *Luna-Encinas*, 603 F.3d at 881. Courts may also consider statements made by officers during the interview which "raise a concern that a person in [the defendant's] position might 'feel compelled to speak by the fear of reprisal for remaining silent or in the hope of more lenient treatment should he confess.'" *Woodson*, 30 F.4th at 1306 (quoting *Illinois v. Perkins*, 496 U.S. 292, 296–97 (1990)). When officers inform an "individual that he is 'not under arrest' and that the proposed conversation is voluntary[,]" it is "powerful evidence that he is not in custody." *Id*. at 1304 (quotations omitted).

Here, the location and length of the detention weigh against a finding of custody. The officers detained Defendant in the parking lot of an apartment complex for less than an hour before his official arrest and there were only two officers on the scene. This is hardly akin to the circumstances in *Miranda* where a "'suspect is yanked from familiar surroundings in the outside world and subjected to interrogation in a police station' or another 'police-dominated atmosphere.'" *Woodson*, 30 F.4th at 1306 (quoting *Howes*, 565 U.S. at 511). Officers questioned Defendant in familiar surroundings and within public view, which "mitigates the risks that motivated *Miranda*." *Id*. (citing *Berkemer v. McCarty*, 468 U.S. 420, 438 (1984)). Further weighing against custody, the officers never brandished their weapons.

Nonetheless, the circumstances surrounding Defendant's detention and the language of the officers weigh in favor of custody. Defendant was handcuffed during

questioning by Officers Ray and Bradford. Although Officer Bradford informed Defendant he was not under arrest while he was handcuffing Defendant, Officer Ray added "yeah and I don't feel like running." (Gov. Ex. 2 at 5:00–5:08.) This indicates Defendant was not free to leave the encounter. In addition, before the officers handcuffed and repeatedly questioned Defendant, the officers removed a gun and a bag of pills from his car, which the officers indicated they knew were narcotics. Further, Officers Ray and Bradford made coercive statements to Defendant during questioning. For example, Officer Bradford told Defendant that if he had "personal use" they would just give him a ticket and let him leave. (*Id*. at 5:26.) Officer Ray told Defendant that he smelled marijuana coming out of his car, and if Defendant was honest, they would work with him. (*Id*. at 6:41–6:50.) Because Defendant was handcuffed, knew officers had already removed a weapon and narcotics from his car, and the officers made several coercive statements, a reasonable person in Defendant's position "would have understood his freedom of action to have been curtailed to a degree associated with formal arrest," *Luna-Encinas*, 603 F.3d at 881, and might be compelled to speak "in the hope of more lenient treatment should he confess." *Woodson*, 30 F.4th at 1306.

Accordingly, based on the totality of the circumstances, the undersigned concludes Defendant was "in custody" for *Miranda* purposes while he was handcuffed and being questioned by Officers Ray and Bradford. *See United States v. Shine*, 306 F. Supp. 3d 1322, 1331 (M.D. Ala. 2018) (finding a defendant was in custody for purposes of *Miranda* when he was handcuffed outside of his car, searched, and questioned about possible drug activity); *United States v. Guardado*, No. 2:22-cr-145-ECM-SMD, 2022 WL 18109847, at

*3 (M.D. Ala. Sept. 16, 2022) (finding the defendant was in custody when she was handcuffed after drugs had been found in her car), *report and recommendation adopted*, 2023 WL 105087 (M.D. Ala. Jan. 4, 2023). Because Officers Ray and Bradford did not give Defendant *Miranda* warnings before subjecting him to custodial interrogation, Defendant's motion to suppress his unwarned statements is due to be granted.

However, not all of Defendant's unwarned statements are due to be suppressed. First, Defendant's statement admitting marijuana was inside his car[22] is not due to be suppressed because the officers' questions fall under the public safety exception to *Miranda*. *See Quarles*, 467 U.S. at 655–58; *United States v. Ochoa*, 941 F.3d 1074, 1096–97 (11th Cir. 2019). Under the public safety exception, officers may ask questions pre-*Miranda* warnings when "they reasonably believe doing so is necessary to protect either the officers or the public." *Ochoa*, 941 F.3d at 1097 (citing *Quarles*, 467 U.S. at 657–59).

Here, the officers reasonably believed that asking if there was anything else in the car was necessary to protect themselves and the others on the scene. The officers responded to a 911 hang-up call. They encountered a group of persons, including one wearing a ski mask. They removed an AR-15 firearm from the car which was laying on the floorboard of the car. Although Defendant was handcuffed outside the car, Ms. Jackson and Defendant's 5-year-old child were still inside the car at that time. Given these facts, Officers Ray and Bradford reasonably believed there could be more firearms or other dangerous objects inside the car. Especially because a young child was in the backseat and there was a ski

---

[22] *See* Gov. Ex. 3 at 0:00-0:10.

masked person, it was reasonable for them to ask Defendant whether anything else was in the car. *See Newsome*, 475 F.3d at 1225 (holding the public safety exception applied when officers asked the defendant whether anything or anyone else was in his motel room because they reasonably believed there were weapons and other people inside the room); *United States v. Boone*, No. 3:22-cr-304-TES-CWB, 2023 WL 4013567, at *3 (M.D. Ala. April 20, 2023) (holding the public safety exception applied when officers asked defendant whether there was anything in his apartment of which they needed to be aware because they reasonably believed the defendant possessed a firearm). Thus, Defendant's unwarned statement that marijuana was in the car is not due to be suppressed.

Second, Defendant voluntarily stated that "if I'm drug tested right now, everything right there is in my system." (Gov. Ex. 4 at :23–:56.)  This was not in response to any question posited by either officer and "[v]olunteered statements of any kind are not barred by the Fifth Amendment." *Innis*, 446 U.S. at 300. Because this statement was not prompted by any questions from the officers, it is not due to be suppressed.

Nonetheless, all other unwarned statements made while Defendant was handcuffed and in response to questioning by Officers Ray and Bradford are due to be suppressed.

3.    *Miranda* does not prevent the admission at trial of physical evidence obtained through unwarned statements.

The physical evidence obtained after Defendant gave unwarned statements cannot be suppressed for two reasons. First, Officer Ray searched the car because Defendant admitted marijuana was under the driver's seat. But, as discussed above, this unwarned

statement is not due to be suppressed because the officers' questioning falls within the public safety exception to *Miranda*.

Second, *Miranda* does not protect defendants from the admission of physical evidence. *Patane*, 542 U.S. at 641. Physical evidence that results from a confession may only be suppressed if it was "an involuntary confession obtained in violation of the Due Process Clause." *Id*. (citing *Oregon v. Elstad*, 470 U.S. 298, 305–06 (1985); *Michigan v. Tucker*, 417 U.S. 433, 450 (1974)). Defendant does not argue the unwarned statement which led to the search of his car was an involuntary confession obtained in violation of the Due Process Clause, and there is no evidence to support such a finding. Thus, the physical evidence obtained from Defendant's car should not be suppressed. *See United States v. Russell*, No. 2:20-cr-23-MHT-JTA, 2020 WL 4742976, at *13–14 (M.D. Ala. July 10, 2020) (recommending motion to suppress physical evidence be denied because *Miranda* does not protect defendants from admission of physical evidence), *report and recommendation adopted*, 2020 WL 4735345, at *1 (M.D. Ala. Aug. 14, 2020).[23]

---

[23] This outcome is consistent with Eleventh Circuit precedent. "While a confession obtained in violation of *Miranda* is inadmissible, the physical evidence derived from such a confession is not subject to the *Miranda* exclusionary rule assuming the predicate for its admissibility can be satisfied without resort to the confession." *United States v. Lall*, 607 F.3d 1277, 1291 (11th Cir. 2010). Even without Defendant's admission that marijuana was under the front passenger seat, the officers had probable cause to search the car due to the smell of marijuana. *See United States v. Smith*, 596 F. App'x 804, 807 (11th Cir. 2015) ("Probable cause may arise when an officer, through training or experience, detects the smell of marijuana.") (citing *United States v. Tobin*, 923 F.2d 1506, 1512 (11th Cir. 1991) (en banc)).

## IV.    CONCLUSION

For the reasons stated above, it is the RECOMMENDATION of the Magistrate Judge that Defendant's motion to suppress (Doc. No. 30) be GRANTED in part and DENIED in part as follows:

1.    Defendant's motion to suppress is due to be GRANTED in regard to his statements made while in custody and subjected to questioning.

2.    Defendant's motion to suppress is due to be DENIED in regard to all physical evidence obtained from his car.

3.    Defendant's motion to suppress is due to be DENIED in regard to statements made either voluntarily or in response to questioning under the public safety exception to *Miranda*.

It is further

ORDERED that the parties shall file any objections to the said Recommendation not later than **July 10, 2025.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.   Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file a written objection to the Magistrate Judge's findings and 28 U.S.C. § 636(b)(1) shall bar a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of a party to challenge on appeal the District Court's order based on unobjected-to-factual and legal conclusions

accepted or adopted by the District Court except upon grounds of plain error or manifest

injustice.  11th Cir. R. 3-1; *Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144,

1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 25th day of June, 2025.

_____

JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE